IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BANDIT LITES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff World Wrestling Entertainment, Inc. ("WWE") files this Complaint against Defendant Bandit Lites, Inc. ("Bandit").

## PARTIES

1. Plaintiff WWE is a Delaware corporation having its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902. WWE is an integrated media and entertainment company principally engaged in the development, promotion, and marketing of television programming, pay-per-view programming, and live arena events, and the licensing and sale of branded consumer products.

2. Defendant Bandit is a Tennessee corporation having its principal place of business at 2233 Sycamore Drive, Knoxville Tennessee 37921. Bandit is a company that provides theatrical production equipment and services, specializing in lighting.

71486623.1

- 2 -

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue in this action is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(a)(2) because WWE resides in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.  Moreover, venue is also proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (c), inasmuch as Bandit is a corporation subject to personal jurisdiction in this judicial district under Conn. Gen. Stat. §33-929(f) and this cause of action arises out of a contract made in this district and/or business Bandit conducted or solicited in this district, and Bandit has regularly conducted or solicited business in this district.

**FACTUAL BACKGROUND**

5. WWE produces broadcast and cable television programs, pay-per-view television programs and live shows in arenas and stadiums in cities around the world.  WWE's unique product, for which it coined the term "sports entertainment," is perhaps best described as an action-adventure episodic drama that is akin to an ongoing, ever-developing soap opera based around WWE's distinctive and attractive characters.

6. From in or around the mid-1990's through mid-November 2008, Bandit was WWE's principal vendor for lighting services.  Such lighting services, included, among other things, leasing to WWE the lighting equipment used in the production of WWE television and pay-per-view programs.

7. In or around November 2007, WWE discussed with Bandit WWE's intention to produce its television programs in high-definition format beginning in early 2008.  In

anticipation of this migration to high-definition format, WWE and Bandit discussed WWE's need for new and/or additional lighting equipment to accommodate the high-definition production. In that connection, Bandit advised WWE that Bandit did not at that time possess, and would need to acquire, certain of such new and/or additional equipment for lease by WWE.

8. On or about November 27, 2007, December 3, 2007, and December 11, 2007, Bandit provided WWE with price lists setting forth the rates for new and/or additional lighting equipment that was available for lease by WWE in connection with its migration to high-definition production.

9. In or around December 2007, WWE orally communicated to Bandit the identification of the particular new and/or additional lighting equipment that WWE desired to lease from the price lists Bandit had provided. Upon information and belief, Bandit acquired the new and/or additional lighting equipment that WWE had identified.

10. WWE leased lighting equipment from Bandit from January 2008 through mid-November 2008, for which WWE paid Bandit a total of $3,850,834 for the period January 1, 2008 through November 17, 2008.

11. In or around July 2008, WWE decided to put out a request for proposal (RFP) for lighting services. The RFP indicated that the selected vendor would begin work effective as of November 17, 2008. Bandit was included in the RFP process and was one of the vendors that submitted a bid. WWE, however, ultimately selected a different vendor.

12. On September 5, 2008, WWE notified Bandit of its decision to select a different lighting vendor. Specifically, Mike Grossman, WWE's Senior Vice President, Television Operations, and Duncan Leslie WWE's Vice President, Event Technical Operations, conducted a telephone conference with Peter Heffernan, President of Bandit, and Peter Willis, WWE's

principal account representative at Bandit, both of whom had been involved throughout the bid process on Bandit's behalf, to communicate WWE's decision to select a different lighting vendor.  At that time, WWE offered to purchase from Bandit the new lighting equipment that Bandit had acquired in December 2007 for lease to WWE in connection with its migration to high-definition production.  This offer was in addition to the monies that WWE had already paid Bandit for the lease of such equipment.

13. Bandit declined WWE's offer, indicating that it had another customer requiring the same equipment and that Bandit could repurpose this equipment for such other customer. Bandit further indicated that it did not want to sell the equipment to WWE because it would receive a benefit from retaining the equipment for lease to other customers.

14. At the time WWE notified Bandit of its decision to select a different lighting vendor, Bandit did not advise WWE of its contention that WWE was subject to a contract for a 52-week lease of lighting equipment throughout the entire 2008 year.

15. Bandit knew from the RFP in or around July 2008 that its relationship with WWE would terminate effective as of November 17, 2008.  Bandit did not provide WWE with any lighting equipment or services from November 17, 2008 through the end of 2008.

16. On or about November 6, 2008, Bandit sent WWE an invoice for November 2008 lighting services in the amount of $206,306.67 that included a full month's rental of lighting equipment despite the fact that Bandit had not provided WWE with any lighting equipment or services after November 17, 2008.

17. In contrast to each of the prior invoices that Bandit sent to WWE from January through October 2008, Bandit for the first time claimed in the November 2008 invoice that the amount of the invoice was an "all inclusive monthly rate **per contract**" (emphasis added).  In

reality, Bandit knew that there were no such specified contract terms which is why such a contract had not been referenced on any of the prior 2008 invoices.

18. On or about November 20, 2008, WWE sent Bandit check number 00125544 in the amount of $116,907.11 representing the prorated portion of the November invoice for lighting services for the period November 1-17, 2008, which Bandit actually provided to WWE.

19. By letter dated November 24, 2008 from Peter Heffernan of Bandit to WWE's Mike Grossman, Bandit acknowledged receipt of WWE's payment but claimed that a balance of $89,399.56 remained due on the November 2008 invoice. Bandit further claimed that WWE owed payment in the amount of $206,306.67 for the entire month of December 2008 as well, despite the fact that Bandit knew it would not be providing WWE with any lighting equipment or services in December 2008. In sum, Bandit claimed that WWE owed Bandit $295,706.23.

20. Bandit's November 24, 2008 letter asserted, among other things, that "the arrangement we worked under in 2008 was predicated on a total payment of 52 weeks in 2008 . . . and the fee was based on a minimum 52-week rental period."

21. By letter dated December 31, 2008, Mike Grossman, on behalf of WWE, responded to Bandit's November 24, 2008 letter, disputing that WWE owed Bandit $295,706.23 and asserting that WWE had fully met its financial obligations to Bandit.

22. By letter dated January 6, 2009, Heffernan reiterated Bandit's contention that "[t]he deal we undertook with WWE was predicated on payment for 12 full months" and continued to demand payment of $295,706.23 on "this contract."

23. By letter dated January 8, 2009, Grossman, on behalf of WWE, denied the existence of a binding agreement between Bandit and WWE, denied that WWE breached any such agreement, and again disputed that WWE owed Bandit $295,706.23.

## COUNT I -
## DECLARATORY JUDGMENT

24.     WWE incorporates herein by reference all of the allegations contained in the preceding paragraphs as if fully set forth at length.

25.     As described herein, an actual and justiciable controversy exists between WWE and Bandit, among other things:

- (a)    that no enforceable agreement existed between WWE and Bandit for a 52-week lease of lighting equipment throughout the entire 2008 year;

- (b)    assuming *arguendo* such an enforceable agreement existed between WWE and Bandit in the first instance, that not all of the lighting equipment leased from Bandit by WWE was subject to such an agreement;

- (c)    that WWE does not owe Bandit $295,706.23 under a purported contract or otherwise; and

- (d)    that Bandit is not entitled to any monetary compensation or other forms of relief from WWE.

26.     A judicial declaration is, therefore, necessary pursuant to 28 U.S.C. § 2201 *et seq.* to determine the respective rights and obligations between WWE and Bandit on the matters described herein.

## PRAYER FOR RELIEF

**WHEREFORE**, WWE prays that the Court:

- (a)    declare that no enforceable agreement existed between WWE and Bandit for a 52-week lease of lighting equipment throughout the entire 2008 year;

- (b)    declare that WWE does not owe Bandit $295,706.23;

(c) declare that Bandit is not entitled to monetary compensation or any other forms of relief from WWE;

(d) declare that, to the extent there was any enforceable agreement between WWE and Bandit for a 52-week lease of lighting equipment throughout the entire 2008 year, the scope of such agreement was limited to the new and/or additional equipment that Bandit purchased for lease to WWE in connection with WWE's migration to high-definition production;

(e) award WWE its attorneys' fees and costs in connection with this action;

(f) award such other and further relief as the Court deems just and proper.

JURY TRIAL DEMANDED

WORLD WRESTLING ENTERTAINMENT, INC.

By:  /s/  Terence J. Gallagher
Stanley A. Twardy, Jr. (ct05090)
Richard P. Colbert (ct08721)
Terence J. Gallagher (ct22415)
DAY PITNEY LLP
One Canterbury Green
Stamford, CT 06901-2047
Telephone:  (203) 977-7300
Facsimile:   (203) 977-7301
Email:  rpcolbert@daypitney.com
Email:  tjgallagher@daypitney.com

Jerry S. McDevitt
Curtis B. Krasik
K&L GATES LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Telephone:  (412) 355-6500
Facsimile:   (412) 355-6501
Email:  curtis.krasik @klgates.com

Its Attorneys

71486623.1